**THE NORTH RIVER.**
**THE RICHARD PECK.**
**THE RUSSELL NO. 7.**
**ARUNDEL CORPORATION v. NEW ENGLAND S. S. CO. et al.**

No. 11779.

District Court E. D. New York.
June 18, 1931.

Foley & Martin, of New York City (W. J. Martin, of New York City, of counsel), for libelant.

Haight, Smith, Griffin & Deming, of New York City (J. W. Griffin and Jas. McKown, Jr., both of New York City, of counsel), for the Richard Peck.

Alexander, Ash & Jones, of New York City (Mark Ash, of New York City, of counsel), for the Russell No. 7.

MOSCOWITZ, District Judge.
On March 19, 1930, libelant's drill boat North River was engaged in the removal of rock in the vicinity of Middle Reef in the East River. On that day, at about 6 a. m., the tug boat Russell No. 7 was engaged in raising the port forward anchor of the drill boat and was standing by at a distance of about three hundred feet off the port for-

ward corner of the drill boat, the tug being between the drill boat and the Astoria shore. The Russell No. 7 had a line made fast from her nigger head down to the shackle on the anchor chain, there being a strain on this line. Her position was in effect that of an anchored vessel. The Russell No. 7 displayed two red lights and a blood red flag in addition to her running light. The two red lights were affixed to the top of the flag pole at the stern of the tug, they were at least four feet apart and visible all around.

The steamer Richard Peck passed between the Russell No. 7 and the drill boat at a rapid rate of speed, creating a disturbance in the water, which caused the drill boat to roll and labor, as a result of which she sustained damages. As the Richard Peck passed under the Hell Gate Bridge, the Russell No. 7 showed her red port running light.

The claim made by the master of the Richard Peck is that he was under the impression that the Russell No. 7 was navigating toward the Astoria shore, and that by reason thereof the Richard Peck attempted to pass between the tug and the dredge. At this time there was available 1,100 feet of water between the dredge and the Astoria shore. The tug was not moving. The steamer, after first sighting the tug, observed the position of the tug, but nevertheless proceeded on a course which brought her between the tug and the dredge.

Captain Avery of the Richard Peck first observed the tug at about Hell Gate Bridge, which was 5,300 feet distant from the tug. Captain Avery testified that when he first observed the tug he estimated her distance from the dredge to be from 250 to 300 feet. He further testified that within 100 feet of the dredge the tug was still 250 to 300 feet from the dredge. After the Richard Peck reached and passed the Hell Gate Bridge the tug was at all times visible.

According to Farrar, the pilot of the Richard Peck, he had a clear vision all the way down, it being almost daylight. The Russell No. 7 sounded the alarm whistle when the Richard Peck was under Hell Gate Bridge

and repeated this signal four or five times. The log of the Richard Peck shows that she passed under Hell Gate Bridge at 5:55 a. m., and passed the tug at 5:58½ a. m.; she covered over a mile in 3½ minutes. The evidence shows that she passed the drill boat without reducing her speed.

The accident was caused solely through the fault of the Richard Peck in disregarding the warning signals of the tug, and in passing between the drill boat and the tug at an excessive rate of speed, and without any fault on the part of the North River or the Russell No. 7.

Decree for libelant against the Richard Peck, and dismissing the petition and libel against the Russell No. 7.

Settle decree and findings on notice.